Matson and wife, Respondents, vs. Dane County, Appellant.

*September 22—November 16, 1920.*

*Highways: State trunk system: Liability of county for improper construction: Negligence: Governmental or proprietary capacity: Creation of nuisance: Pleading: Single primary right: Multiplicity of causes of action.*

1. Where the facts stated in several causes of action in a complaint all show a breach of the same primary right for which recovery is sought, they state but a single cause of action, though they may show minor matters constituting independent grounds for relief.

2. Where the complaint sought recovery for the death of plaintiffs' children, resulting from alleged wrongful acts of defendant, separate causes of action for the same relief on the same facts, basing the right to recover on various grounds, state only a single cause of action, and demurrers should have been sustained as to each of the causes of action except the first.

3. Under sec. 1317, Stats., requiring each county to maintain state trunk highways within the county, sub. 5 of which authorizes claims for damages due to the insufficiency of the trunk system to be against the county, counties are placed in the same relation and have the same legal duties respecting the maintenance of the state trunk highways and liability for defaults in the performance of such duties as were formerly imposed on towns, cities, and villages.

4. While the maintenance of a state trunk highway by a county may be a governmental function with regard to the rights of the public traveling thereon, it is not such a function with respect to injuries thereby occasioned to the owners of the adjoining property. As to them, the county acts in a proprietary capacity and is liable for injuries resulting from its acts.

5. A complaint by tenants occupying land along a highway that a culvert thereunder had been improperly constructed so as to erode a portion of the land occupied by plaintiffs and create a water-hole, which appeared to be a mere pond but which was in fact a dangerous trap, especially attractive to children, and that plaintiffs' children fell into the water-hole and were drowned, states a cause of action in favor of the plaintiffs for the alleged injury.

APPEAL from an order of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed in part; reversed in part.*

This action was brought by plaintiffs to recover for the death of their two children. The children were drowned in a water-hole on the premises of Mary Connor, adjoining a state trunk highway in the town of Windsor ·in *Dane County.* Plaintiffs claim ten separate causes of action, namely: (1) Private nuisance; (2) unlawful obstruction and diversion of the flow of water; (3) unlawful removal of lateral support; (4) failure to repair after notice of defect and the result thereof; (5) negligence. The second five causes of action are the same as the first five, respectively, except that it is not alleged that the water-hole was in a watercourse.

Appellant entered a general demurrer to each of the ten causes of action and the court overruled the demurrer as to the first, second, third, sixth, seventh, and eighth causes of action, and sustained the demurrer to the fourth, fifth, ninth, and tenth causes of action. The defendant appeals from the order of the court overruling the demurrers to the above mentioned causes of action. The plaintiffs have given notice under sec. 3049*a,* Stats., for a review of that part of the order sustaining the demurrer to four of the ten causes of action.

*Roman Heilman,* district attorney of Dane county, for the appellant.

*F. M. Wylie* of Madison, for the respondents.

SIEBECKER, C. J. A preliminary question of pleading arises upon the allegations of the complaint. The pleader has set out the facts constituting the subject of controversy upon which relief is demanded. If the pleader had not attempted to repeat these facts after treating them as the first cause of action, in an attempt to allege nine additional causes of action, the subject would not have challenged our attention. The circuit court deals with the ten separate

demurrers interposed to the ten alleged causes of action, sustaining the demurrers to the fourth, fifth, ninth, and tenth alleged causes, and overruling the remainder. The record does not indicate that the question whether the facts alleged constitute different causes of action was brought to the attention of the court for consideration. It seems to us that the complaint as framed should not receive the approval of tacit consent by passing it without taking note of the subject. Sec. 2646, Stats., provides that:

"The complaint shall contain: . . .

"(2) A plain and concise statement of the facts constituting each cause of action, without unnecessary repetition.

"(3) A demand of the judgment to which plaintiff supposes himself entitled."

There is but one object sought in bringing this action, namely, to enforce the primary right of the plaintiffs for the injury proximately caused by the default of the defendant's officers and servants in performing a duty imposed on them by law. A mere repetition of a statement of facts in a complaint, upon a theory that it constitutes a basis of relief for breach of the primary right alleged as the ground of action, does not, in any sense of the Code, constitute an independent cause of action. There is but one subject of action set out in the complaint as above indicated and all the so-called separate causes of action are parts of that subject, involving the breach of a primary right and the injury it caused plaintiffs. *Emerson v. Nash,* 124 Wis. 369, 102 N. W. 921.

As declared in *Zinc C. Co. v. First Nat. Bank,* 103 Wis. 125, 79 N. W. 229:

"The test of whether there is more than one cause of action stated or attempted to be stated in a complaint is not whether there are different kinds of relief or objects sought, but whether there is more than one primary right sought to be enforced or one subject of controversy presented."

An examination of the entire complaint discloses that

facts are stated as independent grounds for relief, yet when considered in view of the object of the action they set forth but one primary purpose, to which they all relate and for which relief is sought, namely, to redress the plaintiffs' injury, proximately caused them by the breach of this right.

"There may be many minor subjects, and facts may be stated constituting independent grounds for relief, . . . and there be still but a single primary purpose of the suit, with which all the other matters are so connected as to be reasonably considered germane thereto,—parts of one entire subject, presenting to the court but one primary ground for invoking its jurisdiction. That was the rule before the Code, and it was preserved thereby in unmistakable language, as this court has said on many occasions." *Herman v. Felthousen,* 114 Wis. 423, 90 N. W. 432, citing *Bassett v. Warner,* 23 Wis. 673, and other cases on p. 426.

Applying this rule to the complaint in this case, it is manifest that the pleader wholly misconceived the purport and facts alleged in the complaint in construing them as constituting ten different causes of action. In their scope, purpose, and object the facts stated constitute but one cause of action within the provisions of the Code, and hence the alleged nine causes of action, after the first, do not constitute separate causes of action, and the demurrers thereto must be sustained.

It is contended by the defendant that the county is not liable for the alleged default in building and constructing the culvert described in the complaint as crossing the state trunk highway in question. By sub. 1 (a), sec. 1317, Stats., it is provided that

"On and after May 1, 1918, each county shall adequately maintain the whole of the trunk system lying within the county in accordance with the directions, specifications, and regulations made for such maintenance by the commission."

Other provisions of this section prescribe the manner and extent in which such roads are to be maintained by the counties, the payment of the actual cost thereof into the

county treasury out of the state trunk highway appropriation; and sub. 5 provides:

"Claims for damages which may be due to the insufficiency or lack of repair of the trunk system shall be against the county, and sections 1339, 1340, and 1340a of the statutes shall apply to such claims."

But instances where the unsafe and dangerous condition was caused by a town, city, or village, or a public-service corporation are excepted, in which event such corporation causing the defect shall be liable for such claim. These provisions clearly indicate that counties are placed in the same relation and have imposed on them the same legal duties respecting the maintenance of the state trunk highways and liability for defaults in the performance of such duties as were imposed on towns, cities, and villages prior to these statutes. It is obvious that this legislative policy carries with it the legal obligations that arise out of the relation created by the statutes imposing these burdens on counties, and that in case of a breach thereof the county is liable to the persons injured thereby to the same extent as towns, cities, and villages were liable for such defaults before the enactment of these statutes. It naturally follows that the legal remedies appropriate to enforce redress for breaches of such duties by counties are available to parties to enforce their claim against counties.

It is averred in behalf of the county that the alleged cause of action charges a default by the county in its discharge of a governmental function and that therefore no legal liabilities exist therefor. The claim of the county rests on the proposition that what the county's officers and agents may do in discharge of its duty in maintaining a public highway are acts in discharge of its governmental duty and the law imposes no legal liability for the injuries or damages caused thereby, regardless of the manner in which such duty is performed, unless the legislature has created a liability in such cases. The proposition asserted as controlling in

this case is not sustained by the adjudications in this court. In the case of *Folk v. Milwaukee,* 108 Wis. 359, 84 N. W. 420, this court, in speaking of the doctrine of nonliability of a city in its discharge of a governmental function, states:

"We do not lose sight of the fact that there is another principle frequently approved by this court, namely, that a municipal corporation may not construct or maintain a nuisance in the street or upon its property to the damage of another, or *negligently* turn water or sewage upon the lands of another, without liability." *Gilluly v. Madison,* 63 Wis. 518, 24 N. W. 137; *Hughes v. Fond du Lac,* 73 Wis. 380, 41 N. W. 407; *Schroeder v. Baraboo,* 93 Wis. 95, 67 N. W. 27.

These cases all go upon the principle that the city cannot, in the management of its corporate property, create a nuisance injurious to the property or the rights of others. In none of the cases were the city officers who were guilty of negligence or wrongful acts acting in a governmental capacity towards the person injured. In *Bunker v. Hudson,* 122 Wis. 43, 99 N. W. 448, where the city, in grading and improving a street, caused the filling to extend beyond the street limits upon adjoining property, it was urged that the city, while engaged in this governmental function of improving the street, though it acted beyond its corporate duty in invading the adjoining property, was not liable for such wrongful act. In this case the court held:

"In grading the street the city was doing one of the things which, as a municipal corporation, it was authorized to do. That work was done in an improper or negligent manner, so as to invade the rights of the plaintiffs, not as a member of the public, *but as adjoining proprietors. Toward them the city's act was not governmental, but proprietary.* For proximate damages thus caused liability results according to principle, and without conflict of authority." Citing cases of this court on p. 54.

In *Harper v. Milwaukee,* 30 Wis. 365, the city was held liable upon the ground of maintaining a nuisance by an

overflow of water from the street onto adjoining premises and injuring the premises and destroying the owner's merchandise thereon, the overflow being caused by a negligent filling of the gutter with earth and permitting it to remain there for an unreasonable length of time. The court there declares that:

"The general rule of law is that a municipal corporation has no more right to erect and maintain a nuisance than a private individual possesses, and an action may be maintained against such corporation for injuries occasioned by a nuisance for which it is responsible, in any case in which, under like circumstances, an action could be maintained against an individual."

The decisions of this court fully sustain the principle that, while a municipality is not held liable for damages resulting from mere performance of governmental functions, such exception applies only when the city's relation to the injured person is governmental, such as a traveler on the highway, but not when its relation to the injured one is that of a proprietor.

"In respect to the rights of adjoining proprietors, the laying out of streets and the opening and preparing of them for public use and travel are municipal functions, within the corporate duties of municipalities, as distinguished from their purely public or governmental duties, imposed on them as agents of the government." *Damkoehler v. Milwaukee,* 124 Wis. 144, 101 N. W. 706; *Spelman v. Portage,* 41 Wis. 144; *Gilluly v. Madison,* 63 Wis. 518, 24 N. W. 137; *Morrison v. Eau Claire,* 115 Wis. 538, 92 N. W. 280.

The gravamen of the complaint is that the defendant negligently adopted an inadequate and defective plan for the construction of a culvert on the trunk highway in question for the passage of the water in an ancient watercourse, and that the agents and servants of defendant negligently and carelessly executed this plan of constructing such culvert, which caused the water passing through it to create a deep gully and hole at the outlet of said culvert and thereby

caused the lateral support of the land of the adjoining farm of Mary Connor, which plaintiffs occupied as tenants, to be removed, and that the water, by erosion, produced a "hole several feet wide, several feet long, and several feet deep; . . . that thereby the end of the said culvert was undermined and portions of the said culvert broken off and torn away, and the said highway and the said culvert brought into a state of disrepair dangerous to said adjoining premises; that the said culvert was in the said state of disrepair a nuisance; that at times no water flowed in the said watercourse, and the said hole was at such times filled with opaque muddy water, appeared to be but a shallow mud-puddle, and was a dangerous trap and a nuisance, and was especially attractive to children." It is charged that these dangerous conditions existed for a long time prior to June 17, 1919, while plaintiffs were occupying the said Connor farm as tenants, and that on this date the plaintiffs' two children, without any fault on plaintiffs' part, fell into the hole or trap and were drowned. The foregoing facts, in connection with the other facts stated in the complaint, sufficiently charge the creation of a dangerous trap or nuisance on these premises occupied by the plaintiffs as tenants. The dangerous condition thus created on the land adjoining the highway is in the nature of a pitfall and snare, liable to injure persons going onto the premises. The plaintiffs and their children were lawfully on the premises as tenants and were entitled to use them as if they were free from such pitfalls and traps unless they had actual or constructive knowledge of their existence. It is considered that the facts and circumstances alleged in the complaint state a good cause of action in plaintiffs' favor for the alleged injury. *Brinilson v. C. & N. W. R. Co.* 144 Wis. 614, 129 N. W. 664. The court properly sustained the demurrer to the fourth, fifth, ninth, and tenth alleged causes of action. It was error to overrule the demurrers to the second, third, sixth, seventh, and eighth alleged causes of action. The cause must be remanded to

the circuit court with direction to enter an order overruling the demurrer to the first cause of action and sustaining the demurrer to the remaining nine alleged causes of action.

*By the Court.*—It is so ordered. Neither party to recover any costs in this court. The respondents to pay the fees of the clerk of this court.