

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Mr. O. E. Gerron
County Attorney
Ector County
Odessa, Texas

Dear Sir:

Opinion No. 0-905
Re: Authority of the commissioners'
court to purchase a baseball
park in addition to other county
park out of bonds voted for park
purposes

By your letter of September 25, 1939, you request the opinion of this department upon the following two questions, which we quote:

"1. Is the commissioners' court authorized under Article 6078 of the Revised Civil Statutes of Texas to establish two county parks which will be located within a one-mile radius of each such park?

"2. Is the commissioners' court authorized under Article 6078 to purchase a baseball park out of bond funds voted for the purpose of establishing a county park?"

You state further:

"The commissioners' court of Ector County ordered an election for the purpose of determining that Ector County should levy and collect taxes for the purpose of purchasing and improving lands for the use of a county park. The bonds were voted by the taxpayers of Ector County, and the money is now available to pur-

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL



Honorable O. E. Cerron, page 2

chase the park site. A group of individuals known as the Baseball Association of Odessa owns a baseball park in the city of Odessa and owes an indebtedness in the sum of $1,800 upon said park. They have requested the commissioners' court of Ector County to assume and pay off such indebtedness and to take said baseball park for a part of the county park. The baseball park would be a county-city park, the county paying the $1,800 indebtedness against said baseball park, and thereafter the same would be the problem of the city of Odessa. Of course, the baseball park would not be adjacent to or near the original county park site for which the bonds were originally voted, and the original park is a county project and the city will not be obligated in any way for the purchase of same or the upkeep."

The bond record, as submitted to the Attorney General's department for approval of these bonds, which record is now on file in the Comptroller's office, bears the notation that the bonds were voted for the purpose of "purchasing lands to be used for public parks within the boundary limits of county."

Under these facts, the commissioners' court is not required to purchase any particular site, nor is the commissioners' court bound to purchase only one site. City of Beaumont v. Matthew Cartwright Land & Improvement Company (Civ. App., Beaumont, 1920) 224 SW 589.

In addition to Article 6078, which you have cited in your letter, we wish to call your attention to Article 6080 and Sections 1, 2 and 3 of Article 6081e. Since the two statutes and the three sections of the third are relatively short, we are quoting them in full:

"Article 6078. Taxable parks

"Each commissioners' court is authorized to levy and collect a tax not to exceed five cents on each $100 of assessed valuation of the county for the purchase and improvement



Honorable O. E. Gerron, page 3

of lands for use as county parks which shall consist of not more than one hundred acres, and shall not exceed more than four in any one county. No such tax shall be levied and collected until the proposition is submitted to and ratified by the property tax-paying voters of the county at a general or special election called for that purpose, provided a two-thirds majority of the property tax-paying voters of such county, at an election held for such purpose, shall determine in favor of said tax. If said court desires to establish two or more of such county parks they shall locate them in widely separated portions of the county. Said court shall have full power and control over any and all such parks and may levy and collect an annual tax sufficient in their judgment to properly maintain such parks and build and construct pavilions and such other buildings as they may deem necessary, lay out and open driveways and walks, pave the same or any part thereof, set out trees and shrubbery, construct ditches or lakes, and make such other improvements as they may deem proper. Such parks shall remain open for the free use of the public under such reasonable rules and regulations as said court may prescribe."

"Article 6080, City Parks

"The governing body of any incorporated city may purchase, improve and maintain land for use as city parks. Such parks shall not exceed two in number for each two thousand inhabitants. If such body establishes more than one of such parks, it shall locate them in widely separated parts of the city. Such body is authorized to levy and collect a tax not tto exceed five cents on each one hundred dollars of its assessed valuation for the purchase and improvement of lands for use as such parks, and may levy and collect a like annual tax to properly maintain such parks. Said body shall have full power and authority over all such parks, and may build and con-

struct such building as they may deem
necessary, lay out and open driveways and
walks, pave any part thereof, construct
ditches or lakes, set out trees and shrubs,
and make such other improvements as they
may deem proper. Such parks shall remain
open for the free use of the public under
such reasonable rules as said body may pre-
scribe."

"Article 6081e. Condemnation or purchase
by the county or incorporated city of land for
parks or playgrounds; cooperation with State
Parks Board:

"Sec. 1. That any county or any in-
corporated city of this State, either inde-
pendently or in cooperation with each other,
or with the Texas State Parks Board, may ac-
quire by gift or purchase or by condemnation
proceedings, lands to be used for public parks
and playgrounds, such lands to be situated in
any locality in this State and in any sized
tracts deemed suitable by the governing body
of the city or county acquiring same; pro-
vided, however, that lands to be acquired
by any such city or county for said purposes
may be, in the discretion of the governing
body thereof, situated within the State,
either within or without the boundary limits
of such city, but within the boundary limits
of said county and within the limits of said
county wherein said city lies or is situated.

"Sec. 2. To pay for lands for park
purposes, an incorporated city and/or county
may issue bonds, and may levy a tax not ex-
ceeding Ten (10) Cents on the One Hundred
Dollars ($100) valuation of taxable property
in such city and/or county to pay the interest
and provide a sinking fund to retire such bonds,
the issuance of such bonds, and the collection
of taxes in payment thereof to be in accordance
with the provisions of Chapter 1, Title 22, Re-
vised Civil Statutes of 1925, governing the



issuance of bonds by cities, towns and/or counties in this State; this Section shall be construed to authorize the levying of said tax not exceeding Ten (10) Cents on the One Hundred Dollars ($100) of valuation notwithstanding the provisions of Article 6080 of the Revised Civil Statutes of 1925.

"Sec. 3. All parks acquired by authority of this Act shall be under the control and management of the city or county acquiring same or by the city and county jointly, where they have acted jointly in acquiring same, provided that the Commissioners' Court and the City Commission or City Council may, by agreement with the State Parks Board, turn the land over to the State Parks Board to be operated as a public park, the expense of the improvement and operation of such park to be paid by the county and/or city, according to the agreement to be made between such municipalities and the State Parks Board.

"All counties and incorporated cities are authorized to levy a tax of not exceeding five (5) cents on the One Hundred ($100) Dollars property valuation to create a fund for the improvement and operation of such parks."

Your first question obviously refers to the following provision in Article 6078:

"If said court desires to establish two or more of such county parks they shall locate them in widely separated portions of the county."

The phrase "in widely separated portions of the county" is ambiguous and supplies no fixed standard for determining just what distance shall separate the parks.



Honorable O. E. Gerron, page 6


The courts in the face of such ambiguity have been inclined to follow the construction placed on such a provision by the body or official charged with enforcing the statute. 39 Tex. Juris. 235, Sec. 126.

Thus, the determination of the commissioners' court as to just what is a wide separation, in the absence of arbitrary or capricious action by that body, will not ordinarily be disturbed by the courts. Koy v. Schneider, 110 Tex. 369, 221 SW 880.

For example, Article 333 of the Code of Criminal Procedure requires that jury commissioners "be residents of different portions of the county."

In Williams v. State, 45 Tex. Cr. Rep. 218, 75 SW 859, the Court of Criminal Appeals pointed out that the statute does not say how far the commissioners shall live from each other, but merely that they shall reside in different portions of the county, and held that it was permissible to select all three commissioners from the City of Houston, even though that city did not include most of the territory of the county.

This provision was again questioned in Buchanan v. State (Cr. App. 1927) 298 SW 569, and the court held that it was permissible to select two commissioners from the town of Panhandle and the third from the town of White Deer in Carson County.

Therefore, it seems to us to rest within the sound discretion of the commissioners' court to determine whether the county parks shall be separated by a distance of one mile or ten or more miles, so long as the commissioners make a bona fide effort to comply with the statute and to serve the best interests of the county.

Your second question involves a definition of the word "park."

The dictionary definition of a park is "a piece of ground in or near a city or town kept for ornament and recreation and usually enclosed." Webster's New International Dictionary, Second Edition, unabridged, 1938.



Honorable O. E. Gerron, page 7

"In the general acceptance of the term, a public park is said to be a tract of land, great or small, dedicated and maintained for the purpose of pleasure, exercise, amusement or ornament; a place to which the public at large may resort to for recreation, air and light." Wiggins v. City of Fort Worth, 299 SW 468.

The right of public authorities charged with administration of parks to place on the park ground certain mechancial contrivances which contribute to the amusement and recreation of the public who frequent the parks is generally recognized. Emmons v. City of Virginia, 152 Minn. 295, 188 NW 561, 29 ALR, 860.

The California court points out that the devotion of a reasonable portion of a public park to tennis courts, croquet grounds and children's playgrounds, with suitable appliances for these forms of public amusement and recreation comes strictly within the proper and legitimate use for which public parks are created. Caulfield v. Berwick (1915) 27 Cal. App. 493, 150 P. 646.

With regard to improvements in county parks, Article 6078 empowers the commissioners' court to "build and construct pavilions and such other buildings as they may deem necessary, lay out and open driveways and walks, pave the same or any part thereof, set out trees and shrubbery, construct ditches and lakes, and make such other improvements as they may deem proper." The governing body of an incorporated city or town is given the same authority in connection with its parks by Article 6080.

It seems to us that the commissioners' court undoubtedly would be authorized under Article 6078 to devote a portion of its park grounds to a baseball park. If it may purchase ground and lay out a baseball stadium, no sufficient reason occurs to us why it may not purchase a baseball stadium as part of the county's park system.

Your statement of facts raises a third question, which we deem it advisable to consider also in connection with this opinion; that is, whether the county would be authorized to purchase this baseball park and turn it over



to the city to operate and maintain.

"Counties being component parts of the State, have no powers or duties except those clearly set forth and defined in the Constitution and statutes. The statutes of Texas have clearly defined the powers, prescribed the duties and imposed the liabilities of the Commissioners' Court, the medium through which the different counties act, and from those statutes must come all the authorities vested in the counties." Edwards County v. Jennings, 33 S. W. 585 (Civ. App.1895); affirmed, 35 S. W. 1053.

Article 6078 refers exclusively to parks bought and maintained by a county, and Article 6080 refers exclusively to parks bought and maintained by a city. Any authority for the purchase of a park by the county to be maintained by the city must come if at all from Article 6081e. Section 3 of this latter article provides, specifically, that park land acquired under its provisions shall be managed and controlled by the city or county acquiring same. If the park is acquired jointly by the city and county, they must jointly control it. No authority is to be found here for acquisition by the county and management and control by the city, or vice versa.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED DEC 5, 1939

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

By *Robert E. Kepke*

Robert E. Kepke
Assistant

By *Peter Maniscalco*

Peter Maniscalco

PM:LM



APPROVED
OPINION
COMMITTEE
BY *Bob*
CHAIRMAN